UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>SHIHAB AHMED SHIHAB SHIHAB,<br>  a/k/a SHIHAB AHMED SHIHAB,<br>  a/k/a SHIHAB AHMED,<br>  a/k/a ABU AHMED,<br><br>    Defendant. | CASE NO. 2:22-CR-00236<br><br>JUDGE WATSON<br><br>UNITED STATES' SENTENCING MEMORANDUM |

The United States of America, by and through its undersigned counsel, respectfully submits this memorandum for the sentencing of Defendant Shihab Ahmed Shihab Shihab (hereinafter, "Defendant" of "Shihab"). For the reasons set forth herein, the United States recommends that Defendant be sentenced to a term of imprisonment of 180 months, followed by a lifetime period of supervised release, ordered to forfeit the items listed in the plea agreement (Doc. #32), and pay a $100 special assessment.

**I.    Factual Background**

Defendant, a citizen and national of Iraq, entered the United States in or about September 2020. He primarily resided in Columbus, Ohio from at least December 2020 through his arrest in May 2022. Throughout much of that time, Defendant attempted to provide material support to terrorists in furtherance of a plot to assassinate former President George W. Bush, a United States national. Believing that former President Bush was responsible for killing many Iraqis and breaking apart the entire country of Iraq during Operation Iraqi Freedom, Defendant, whose own life changed during and after the war, proudly assisted in this plot.

In late November 2021, Defendant shared with INDIVIDUAL 1 his desire to smuggle at least four Iraqi nationals who were associated with Islamic State of Iraq and Syria (ISIS) into the United States with the goal of assassinating the former President. Shihab believed that INDIVIDUAL 1 was someone who could assist with obtaining false immigration and identification documents, and who had connections with alien smuggling organizations. In fact, during the Fall of 2021, Shihab assisted INDIVIDUAL 1 in what he believed was the successful smuggling of an Iraqi foreign national with ties to ISIS into the United States.

During the initial conversations with INDIVIDUAL 1 about the assassination plot, Shihab also inquired about the former President's residence in Texas and the type and amount of security protecting the President. At one point, there were discussions about obtaining replica or fraudulent police and/or FBI identifications and badges.

As Defendant would later explain to INDIVIDUAL 1 in the early months of 2022, despite a desire to be involved in the actual assassination even if it cost his own life, Shihab understood his role was to oversee travel logistics, obtain vehicles and weapons, as well as locate and conduct surveillance on the former President's residences and offices. In fact, on February 7, 2022, Defendant traveled to Dallas, Texas, where he met with INDIVIDUAL 1 and continued to discuss the plot to murder the former President. Specifically, they discussed the logistics and potential costs associated with the assassination plot, as well as Shihab's desire to take videos of former President Bush's office and residence.

Defendant traveled to the former President's Dallas home on February 8, 2022. He recorded videos of the front access gate and the surrounding area leading into the neighborhood. Shihab also traveled to and walked around the George W. Bush Institute in Dallas, taking video recordings of the library and office area. Fortunately, INDIVIDUAL 1 convinced Defendant not

to send the videos to the two former Iraqi intelligence officers who were part of the assassination plot out of concerns for operational security. This apparently resonated with Shihab, who routinely employed operational security measures such as using burner phones, encrypted applications for communication and code words.

In the months since Shihab shared his plot to assassinate the former President, there were regular conversations about the best type of firearms to use and how to acquire firearms. Before leaving Dalles, Defendant and INDIVIDUAL 1 discussed meeting to look at potential firearms and police uniforms. On March 2, 2022, Defendant met INDIVIDUAL 1 in a hotel room in Columbus, Ohio to look at potential firearms and law enforcement uniforms.[1] Shihab examined and handled the firearms as well as the uniform; ultimately, he expressed interest in obtaining Colt M-16 rifles and Sig Sauer P226 pistols for use in the operation. During this meeting, Defendant also took photographs of the firearms and uniform to send to his associates.

Between April and May 2022, Defendant had at least <u>two</u> opportunities to tell law enforcement of the plot to assassinate former President Bush. Even when asked directly about his knowledge of any other possible terrorist acts or pending attacks or the assassination plot specifically, Shihab denied any such knowledge and did not disclose his attempts to provide material supports and resources to conspirators overseas. Further, he lied about his time in Dallas and the fact that he visited locations associated with the former President. Instead, he revealed only a minimized version of his role in helping to facilitate the smuggling of an individual he belied to be an Iraqi foreign national with ties to ISIS.

II. **Procedural History**

---

[1] The items in the hotel room were staged by the FBI.

On December 15, 2022, the United States Attorney for the Southern District of Ohio filed a one count Information charging the Defendant with Attempting to Provide Material Support to Terrorists, in violation of 18 U.S.C. § 2339A. On March 8, 2023, Defendant entered a plea of guilty to Count 1 pursuant to a Rule 11(c)(1)(A) Plea Agreement. Sentencing in this matter is scheduled for February 12, 2024.

### III. Sentencing Guidelines Calculation

a. <u>Statutory Maximum Sentence</u>

The maximum sentence for Count 1 is fifteen years imprisonment, any term of years or life supervised release, a fine of $250,000, and a $100 special assessment.

b. <u>Sentencing Guidelines Calculation</u>

In imposing a sentence, the Court must take into account the considerations of sentencing set forth in 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220, 261 (2005). First, as stated in Section 3553(a)(4), the Court must determine and consider the sentencing range established by the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). As the Presentence Investigation Report ("PSR") correctly calculates, the combined adjusted offense level is **43**. This offense level accounts for a **3**-level reduction for Defendant's acceptance of responsibility and timely notification of his intention to enter a plea of guilty. Defendant falls within Criminal History Category VI pursuant to U.S.S.G. § 3A1.4(b) as the offense involved a federal crime of terrorism. At a level **43** and Criminal History Category of VI, the advisory guideline range is life. However, pursuant to U.S.S.G. §5G1.1(a), Defendant's guideline range is capped at the statutory maximum of 180 months of imprisonment.

### IV. The Proper Sentence

4

Case: 2:22-cr-00236-MHW Doc #: 57 Filed: 02/05/24 Page: 5 of 8 PAGEID #: 161

Once the Court has properly calculated the guideline range, the Court must next consider all the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

    a.   <u>The Nature and Circumstances of the Offense</u>

Defendant knowingly and intentionally attempted to provide material support and resources in a plot to assassinate a former President. Such conduct ranks high among serious offenses. For his part, Shihab identified an individual he believed could assist in smuggling in persons, some with ISIS affiliation, into the United States; traveled to Dallas, Texas for reconnaissance of former President Bush's residence and office, capturing video along the way; and handpicked the firearms and police uniforms he thought most useful in carrying out a successful mission. For nearly four months, Defendant engaged in ongoing discussions and actions in furtherance of this plot. For another two months, despite obvious opportunities to raise the alarm with law enforcement, he kept the plans a secret.

Shihab demonstrated street smarts, and criminal aptitude, from the start. Ever concerned with operational security, Shihab required the use of burner phones, encrypted communication applications and code names as plans evolved. Even what he believed to be the illegal smuggling

5

of an individual with ties to ISIS was just a test run in his mind for what INDIVIDUAL 1 could do – and how Shihab could use his perceived smuggling network to bring in assassins.

Shihab's assistance was designed to aid in the murder of former President Bush, such conduct constituting a federal crime of terrorism. Fueled by emotions and the aftermath of the Iraq War, not to mention his desire to profit financially, this effort was calculated to retaliate against not only the former President but all Americans.

      b.   The History and Characteristics of the Defendant

Defendant described a well-rounded upbringing in a loving home with financial stability where his parents stressed the importance of family, education, and religion. After high school, Shihab attended Al-Iraqia University where he obtained a degree in Literacy and Arts in 1994. In 1998, Shihab married and is the father of five children. As described in the PSR, and consistent with at least the partial motivation for the underlying offense, Shihab's life changed for the worse in 2003 with the Iraq War. According to Shihab, as noted in the PSR, he witnessed a great amount of violence and death during the war, was held captive by the Syrians and tortured, lost his home and financial stability and eventually his marriage in recent years. After the war, Shihab remained politically active in his work for several years before serving as Project Manager for a concrete company in Iraq just before relocating to the United States in 2020.

Perhaps a skill learned to survive the war, Defendant often presented as a hustler throughout the criminal investigation. Working for cash under the table despite no work authorization, facilitating illegal smuggling for tens of thousands of dollars on the side, and planning the assassination of the former President, which he admitted in the PSR was financially motivated as well. Defendant's history and characteristics – post war – demonstrate the savviness of an educated survivor willing to do anything for money. And an even easier sell where former

6

President Bush or United States citizens are concerned given the assassination plot and willingness to knowingly smuggle in a person, he believed to have ISIS ties.

In weighing the Section 3553(a) factors, this Court must acknowledge Shihab's difficult time during the war, but not allow it to justify or minimize the calculated plot and his actions in furtherance of it to bring terror to the United States. A sentence of 180 months, at the statutory maximum but a variance from the advisory life sentence otherwise recommended by the guidelines achieves such a balancing act.

      c. <u>The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment</u>

A lengthy term of imprisonment also reflects the seriousness of the offense, promotes respect for the law, and provides for just punishment. Holding Defendant accountable for attempting to engage in violence such as this is paramount for maintaining a just society and ensures that Shihab faces the consequences of his actions. As noted above, attempting to facilitate the assassination of a former President in retaliation for official actions is indisputably a serious offense, and a 15-year sentence appropriately recognizes the gravity of Defendant's conduct.

      d. <u>The Need to Afford Adequate Deterrence to Criminal Conduct and Protect the Public</u>

The United States' recommended sentence will also serve the twin goals of specific and general deterrence. A 180-month term of imprisonment hopefully permits Defendant sufficient time to realize that no amount of money for criminal activity or personal animus is worth risking your liberty. In turn, such a lengthy sentence protects the public from Defendant and his lack of respect for the life of Americans. Moreover, by enforcing accountability, we not only protect the wellbeing of intended victims, but the Court can send a clear message to the greater community, and world, if necessary, that such actions will not be tolerated.

**V.     Conclusion**

For the forgoing reasons, the United States respectfully requests that the Court sentence Defendant Shihab Ahmed Shihab to a term of imprisonment of 180-months, followed by lifetime term of supervised release, order the forfeit of items listed in the plea agreement (Doc. #32), and impose a $100 special assessment. This sentence is sufficient, but not greater than necessary, to effectuate the purposes of 18 U.S.C. § 3553(a).

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

s/*Jessica W. Knight*
JESSICA W. KNIGHT (0086615)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Phone: (614) 469-5715
Jessica.knight@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing United States' Sentencing Memorandum was served this 5th day of February 2024, electronically on all counsel of record.

s/*Jessica W. Knight*
JESSICA W. KNIGHT (0086615)
Assistant United States Attorney